UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                 )
MARILYN BARRESI, PERSONAL        )
REPRESENTATIVE OF THE ESTATE     )
OF STEPHANIE MCMAHON             )
               Plaintiff,        )
                                 )    Civil Action
v.                               )    No. 18-10737-PBS
                                 )
CITY OF BOSTON                   )
                                 )
                                 )
               Defendant.        )
_____)
```

**MEMORANDUM AND ORDER**

October 11, 2018

Saris, C.J.

## I. INTRODUCTION

This sad and troubling case involves the murder of Stephanie McMahon allegedly by Randall Tremblay. Her mother, Marilyn Barresi, filed this lawsuit against the City of Boston on behalf of the Estate of McMahon alleging that two police officers failed to protect her despite the issuance of a restraining order against Tremblay by the Boston Municipal Court. In the Amended Complaint (Docket No. 17), Plaintiff asserts eleven counts against the City: wrongful death claims under Mass. Gen. Laws ch. 229 (Counts I and II); various negligence claims and a claim of a "Violation of Boston Police

Department Policy"[1] (Counts III, V, VI, and VII); an intentional infliction of emotional distress claim (Count IV); two due process claims under 42 U.S.C. § 1983 (Counts VIII and IX); an equal protection claim under 42 U.S.C. § 1983 (Count X); and a failure to train and/or supervise claim under 42 U.S.C. § 1983 (Count XI).

Defendant filed a motion to dismiss all counts for failure to state any claim upon which relief can be granted (Docket No. 18). After hearing, Defendant's motion to dismiss is **ALLOWED**. Because Plaintiff did not oppose the motion to dismiss the claims asserted under state law in her brief, the Court will only address the constitutional claims under § 1983.

## II. FACTUAL BACKGROUND

The following factual background is taken from the Amended Complaint. The allegations must be taken as true at this stage of the litigation. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

On April 23, 2014, the Boston Municipal Court issued a restraining order against Tremblay ordering him to stay away from McMahon's residence. It did not expire until April 23, 2015. On November 16, 2014 around 2:10 A.M., McMahon called 911 and stated that Tremblay was "trying to hit [her] over the head

---

[1] It appears Plaintiff has labeled this claim Count VIII instead of Count VII, due to a typographical error. This Court will refer to Plaintiff's "Violation of Boston Police Department Policy" claim as Count VII.

with a stick," and that she had an active restraining order against him. Officers Robert C. Boyle and William Hubbard were dispatched to McMahon's apartment to respond to the call. Before responding to the disturbance, the officers did not log into the record management system inside their vehicle, and therefore did not see the details of the 911 call.

When the officers entered the apartment building, they saw a man in the hallway in front of McMahon's unit. McMahon, who was inside, opened the door to tell the officers repeatedly that she had a restraining order against the man in the hallway. At the time, the officers did not know the man's name. They did not check the record system in their vehicle in order to determine whether McMahon in fact had an active restraining order. The officers also did not request additional information from the 911 dispatcher, nor did they speak to a supervisor to confirm either the identity of the man in the hallway or the existence of a restraining order.

Boston Police Department procedure requires officers to "arrest any person that the officer observes, or has probable cause to believe, has committed a violation of a court order." Officers Boyle and Hubbard did not arrest the man, later identified as Tremblay, but instead escorted him out of McMahon's apartment building and transported him to Shattuck Hospital. Tremblay also had an outstanding warrant at the time

3

for failing to register as a sex offender. When they arrived at Shattuck Hospital, Officers Boyle and Hubbard left Tremblay outside the facility. They did not seek to admit Tremblay to Shattuck, nor did they ask any staff at Shattuck to identify the man. At some point later, Tremblay returned to McMahon's apartment and killed her.

During an internal affairs investigation, Officers Boyle and Hubbard indicated "that they did not have the training or knowledge of the City of Boston's police department rules and regulations with respect to the handling of domestic violence cases."

### III. DISCUSSION

#### A. Standard of Review

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Plaintiff filed five exhibits with her Memo in Opposition to Defendant's Motion to Dismiss (Docket No. 32-1). Plaintiff describes the Exhibits as: Exhibit A, "Transcript of 911 call"; Exhibit B, "Abuse Prevention Order"; Exhibit C, "Police Reports"; Exhibit D, "Findings of Internal Affairs

4

Investigation"; and Exhibit E, "Internal Affairs Transcripts." Defendant objects to the consideration of these exhibits.

> Ordinarily when ruling on a Rule 12(b)(6) motion,
>
> any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment. . . . However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.

Watterson, 987 F.2d at 3. Because Plaintiff does not sufficiently reference these documents in the complaint, this Court declines to consider any of these documents except the Abuse Prevention Order, a public court order, in ruling on the City's Motion to Dismiss.[2]

**B. Due Process Claims under 42 U.S.C. § 1983 (Counts VIII and IX)**

Plaintiff has sued the City of Boston, alleging that Officers Boyle and Hubbard's actions "shocked the conscience" and "increased the known threat" to McMahon, which violated her substantive due process rights under the Due Process Clause. A municipality is liable under § 1983 when its policy or custom is the "moving force" behind a constitutional violation. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). However "a municipality cannot be held liable under §

---

[2] At the hearing, Plaintiff requested the opportunity to move to amend her complaint on the § 1983 claims based on these additional materials.

1983 on a *respondeat superior* theory." Id. at 691. The Court must first determine whether the officers' actions gave rise to a constitutional violation before the City can be held liable under § 1983. See Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005)(holding that in substantive due process cases, the Court must first examine whether the facts alleged state a claim for a constitutional violation, and then whether particular defendants are liable under § 1983). Defendant argues that Plaintiff's § 1983 claims against the City must be dismissed because, among other things, the Fourteenth Amendment does not protect a person from the violent acts of third persons.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. To state a claim under § 1983, a plaintiff must plausibly allege that the deprivation of a protected interest, here, McMahon's life, was caused by governmental conduct. Rivera, 402 F.3d at 34. That burden is "more difficult when the person who inflicts the injury is a private person." Id. Generally speaking, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989) (finding there was no due process violation when the State did not intervene to protect a

6

child when severe injury occurred while in the custody of the father). This generally includes the failure to arrest someone who later goes on to commit violence. Town of Castle Rock v. Gonzales involved the failure by police to enforce a domestic restraining order by failing to arrest the violator, which resulted in the victim's death. 545 U.S. 748, 751-54 (2005). The Supreme Court held that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor its 'substantive' manifestations." Id. at 768.

However, there are exceptions to the general rule that a State has no duty to protect someone from third party violence. One theory is that the government may be liable when the State creates a danger to a victim or makes a victim more vulnerable to the risk of harm. The Supreme Court noted in DeShaney:

> While the State may have been aware of the dangers that [the son] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of [the son] does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter.

489 U.S. at 201. Post-DeShaney, most circuits, including the First Circuit, have acknowledged that the state-created danger

theory is a colorable claim under the Due Process Clause. See Irish v. Maine, 849 F.3d 521, 525-26 (1st Cir. 2017) (declining to dismiss a substantive due process claim based on the state-created danger theory).

Even where a state-created danger exists, a plaintiff must prove that the state actions "shock the conscience of the court." Rivera, 402 F.3d at 35. "Although the circumstances of each case impact whether the state action at issue meets this standard, 'where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice.'" Irish, 849 F.3d at 526 (quoting Rivera, 402 F.3d at 36).

Relying primarily on the state-created danger theory, Plaintiff alleges that the police officers' failure to investigate whether there was an active restraining order against the man in the hallway "affirmatively increased the threat of harm to the decedent, and emboldened Mr. Randall Tremblay to return to the apartment and kill her."[3]

Two recent cases provide some guidance in determining whether the emboldening claim in this case is sufficient to

---

[3] Plaintiff also asserts that the City had a "special relationship" with McMahon through her status as a domestic violence victim, and violated her due process rights by failing to protect her. Here, however, there was no affirmative act of restraining the victim's freedom to act on her own behalf, implicating due process protection under this exception to the general rule that a State does not have a duty to protect a victim from third person violence. DeShaney, 489 U.S. at 200.

8

support a state-created danger theory of liability. In <u>Irish v. Maine</u>, the First Circuit held that the affirmative actions of the police supported a state-created danger theory of recovery. 849 F.3d at 528. The police left a voice message notifying a man about an accusation of rape against him despite an explicit request from the victim not to contact the man for fear that it would incite further violence. <u>Id.</u> at 523. Shortly after receiving the voice message, the man broke into the victim's parents' home, fatally shot the victim's boyfriend, shot and wounded the victim's mother, and abducted the victim. <u>Id.</u> at 522. The First Circuit rejected the argument that the victim's due process rights were not violated because the police were following standard police practice in trying to interview the violator. <u>Id.</u> at 526. In the First Circuit's view, the argument failed "to take into account the <u>manner</u> in which the officers tried to interview the suspect - - at the outset of the investigation, before any other precautions had been taken, and despite being warned by the complainant about the suspect's violent tendencies." <u>Id.</u> The First Circuit held that violations of protocol and training are relevant to the substantive due process inquiry, and it expressed concern about the dearth of information in the complaint on these issues. <u>Id.</u>

In <u>Okin v. Vill. of Cornwall-on-Hudson Police Dept.</u>, the Second Circuit found support for a state-created danger theory

9

when the police officers "enhanced the danger to [the victim] by implicitly but affirmatively encouraging or condoning [the perpetrator's] domestic violence." 577 F.3d 415, 429 (2d Cir. 2009). In Okin, there was an "escalating series of incidents that followed the officers' response to [the victim's] first complaint of domestic violence, where the officers and [the accused] had discussed sports, and the officers openly expressed camaraderie with [the accused] and contempt for [the victim]." Id. at 430. The evidence suggested that the officers' conduct "ratchet[ed] up the threat of danger to [the victim]" by, for example, failing to arrest the accused even when he admitted to officers that he could not "help it" if he "smack[ed]" the victim around. Id. at 430. On these facts, the Second Circuit held the Due Process Clause prohibits police officers "from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages intentional violence against the victim." Id. at 434.

While the Supreme Court has held that a State's failure to arrest does not implicate substantive due process rights, the above case law supports a state created danger theory when a police officer increases the risk of harm to a domestic violence victim by some affirmative conduct beyond mere failure to arrest. Plaintiff in this case, however, fails to allege any

10

facts that plausibly demonstrate that Officers Boyle and Hubbard's actions "emboldened" Tremblay to murder McMahon. Unlike in Irish, the police did not increase the risk of harm by enraging the abuser by telling him about a victim's allegations without protecting her despite a request not to tell him. In this case, the man in the hallway already knew that McMahon was attempting to enforce the restraining order against him because he heard her tell the police officers about the order. Also in contrast to Okin, there are no allegations that Officers Boyle and Hubbard engaged in a that-a-boy attitude with the abuser. It is not alleged that the officers conveyed to Tremblay, either explicitly or implicitly, that they condoned his actions or that he would not be disciplined. Instead, they removed Tremblay from the premises and drove him to a homeless shelter.

This case is so troubling because the police officers failed to make even a minimal effort of checking whether McMahon had an active restraining order. If the officers had done so, they would have discovered that there was an active order and that, according to Boston Police Department Policy, they were required to arrest Tremblay. While the enforcement of the order via an arrest might have prevented the murder,[4] Plaintiff has not alleged more than the officers' failure to arrest Tremblay. This

---

[4] It is not clear in the complaint when Tremblay returned to murder McMahon.

11

may violate Boston Police Department Policy, but does not implicate substantive due process rights. See Castle Rock, 545 U.S. at 768; see also Estate of Smithers ex rel. Norris v. City of Flint, 602 F.3d 758, 764 (6th Cir. 2010)(finding no substantive due process violation when officers released abuser from custody on trespassing charge rather than holding her overnight on a domestic violence charge).[5] Accordingly, the claims are dismissed.

**C. Equal Protection Claim under 42 U.S.C. § 1983 (Count X)**

Count X alleges an Equal Protection Claim under 42 U.S.C. § 1983 asserting Officers Boyle and Hubbard selectively treated Ms. McMahon differently as she was a woman that they perceived to be an alcoholic and drug abuser. "[A]lthough there is no constitutional right to police protection," the Fourteenth Amendment Equal Protection Clause does prohibit executive and law enforcement officials from "selectively deny[ing] . . . protective services to certain disfavored minorities." Hayden v. Grayson, 134 F.3d 449, 452 (1st Cir. 1998)(alteration in original)(quoting DeShaney, 489 U.S. at 197 n.3). Supreme Court cases have "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that

---

[5] In light of this analysis, the Court does not address the question whether the officers' actions were "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience." Rivera, 402 F.3d at 36 (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

12

she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(per curiam). Plaintiff has not alleged sufficient facts to draw a reasonable inference that the Officers intentionally treated McMahon differently from those similarly situated – either because she was an alcoholic and drug user, or because she was a victim of domestic violence. The Equal Protection Claim is dismissed.

**D. Failure to Train/Supervise Claim under 42 U.S.C. § 1983 (Count XI)**

Count XI alleges that the City failed to properly train and/or supervise Officers Boyle and Hubbard in how to respond to domestic violence situations. "A municipality can be liable under § 1983 for failing to [train, supervise, and discipline officers] if that failure causes a constitutional violation or injury and 'amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" DiRico v. City of Quincy, 404 F.3d 464, 468–69 (1st Cir. 2005)(second alternation in original)(quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Accordingly, because the Plaintiff fails to allege an underlying constitutional injury, her failure-to-train theory must also be dismissed.

**ORDER**

13

The motion to dismiss (Docket No. 18) is **ALLOWED** without prejudice to a motion to amend the complaint filed within 30 days.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge