UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-cv-10737-PBS

MARILYN BARRESI, PERSONAL
REPRESENTATIVE OF THE ESTATE OF
STEPHANIE MCMAHON

        Plaintiff,

        v.

CITY OF BOSTON

        Defendant.

**DEFENDANT CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [ECF NO. 41] [1]**

## I.    INTRODUCTION & PROCEDURAL BACKGROUND

Plaintiff's Amended Complaint [ECF No. 17] was dismissed by this Court following a hearing on the City of Boston's ("City") motion to dismiss. See Memorandum & Order dated October 11, 2018 [ECF No. 40]. The Court's Order permitted Plaintiff to amend her complaint within 30 days. Plaintiff filed her Second Amended Complaint on November 14, 2018.[2] Plaintiff's Second Amended Complaint must be dismissed for the same reason that her Amended Complaint was dismissed: it fails to state a claim against the City.

As with her Amended Complaint, Plaintiff's Second Amended Complaint alleges that the decedent, Stephanie McMahon ("McMahon"), was killed by Randall Tremblay ("Tremblay"). Plaintiff claims that the City is responsible for McMahon's death because several Boston police

---

[1] Though Plaintiff labels ECF No. 41 as her "Amended Complaint" it is actually her Second Amended Complaint. The City will refer to ECF No. 41 as Plaintiff's Second Amended Complaint.

[2] One day late.

officers failed to arrest Tremblay for violating a restraining order that McMahon had against him.  As noted by this Court in its Order, this allegation, without more, does not give rise to a constitutional claim against the City.[3]  Plaintiff's Second Amended Complaint does not allege anything different.  Instead, Plaintiff's Second Amended Complaint contains thirteen new "factual" paragraphs that consist entirely of buzzwords and conclusory allegations.[4]  In the absence of any new <u>factual</u> allegations, Plaintiff's Second Amended Complaint fails to state a claim against the City.

## II.     FACTUAL BACKGROUND[5]

McMahon had an active restraining order against Tremblay.  (Second Amended Complaint "Compl." ¶¶ 6-7).  On November 16, 2014, McMahon called 911 to report that Tremblay was "trying to hit [her] over the head with a stick" and that she had a restraining order against him.  (Compl. ¶ 9).  Officer Robert C. Boyle ("Officer Boyle") and Officer William Hubbard ("Officer Hubbard") responded to McMahon's apartment.  (Compl. ¶ 10).  Upon arrival, the officers observed Tremblay outside of McMahon's door.  (Compl. ¶ 12).  McMahon told the officers that she had a restraining order against Tremblay.  (Compl. ¶ 13).  The officers removed Tremblay from McMahon's apartment and transported him to Shattuck Hospital.  (Compl. ¶ 17).  The officers left Tremblay outside the hospital.  (Compl. ¶ 25).  At no point in time did the officers undertake efforts to determine whether McMahon in fact had a restraining

---

[3]     Because the Plaintiff did not oppose the dismissal of her state law claims, the Court declined to address in its Order whether this alleged conduct was enough to support a state law claim against the City.  Plaintiff now re-alleges her state law claims in her Second Amended Complaint.  The City submits that it is immune from liability for any state law claim based upon this alleged conduct, as discussed below.

[4]     Other than the addition of paragraphs 33 through 46, the facts alleged in Plaintiff's Second Amended Complaint are identical to those alleged in Plaintiff's Amended Complaint [ECF No. 17].

[5]     The following facts are accepted as true for the limited purpose of this motion only.

order against Tremblay. (Compl. ¶¶ 11, 14-16, 19-20). Tremblay returned to McMahon's apartment and killed her. (Compl. ¶ 22).

## III. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To determine "whether a complaint states a plausible claim, [courts] 'perform [a] two-step analysis.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mtn. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). "At the first step, we distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (internal quotation marks omitted). "At step two, we must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." Id. (internal quotation marks omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

## IV. ARGUMENT

### A. PLAINTIFF'S WRONGFUL DEATH CLAIMS MUST BE DISMISSED BECAUSE THE MTCA PROVIDES THE EXCLUSIVE REMEDY FOR CLAIMS OF WRONGFUL DEATH CAUSED BY THE NEGLIGENCE OF A PUBLIC EMPLOYEE.

In Counts I and II, Plaintiff seeks to recover damages under G. L. c. 229, the wrongful death statute, on a theory that McMahon died as a result of the officers' negligence. (Compl. ¶¶ 47-51). The City recognizes that it may be liable under the MTCA for a death caused by the negligent acts or omissions of its employees.[6] See G. L. c. 258, § 2. But a plaintiff may not

---

[6] Though, under the facts alleged in this case, the City is immune from liability for any negligence claim, as discussed later in this memorandum.

bring both a wrongful death claim under G. L. c. 229 <u>and</u> a negligence claim under G. L. c. 258 when a plaintiff's wrongful death claim sounds in negligence.  This is because the MTCA provides the <u>exclusive</u> remedy for "personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment…." G. L. c. 258, § 2.  <u>See</u> <u>also</u> <u>Stamps v. Town of Framingham</u>, 38 F. Supp. 3d 146, 159 (D. Mass. 2014) (dismissing wrongful death claim grounded in negligence against a municipality).  Because Plaintiff's wrongful death claims (Counts I and II) are based upon Officer Boyle and Officer Hubbard's alleged negligence, they must be dismissed because they are governed by the MTCA.

> **B.  PLAINTIFF'S NEGLIGENCE CLAIMS UNDER THE MTCA MUST BE DISMISSED BECAUSE THE CITY IS IMMUNE FROM LIABILITY PURSUANT TO SECTIONS 10(h) AND 10(j) OF THE MTCA.**

Plaintiff brings four negligence claims against the City:  Count III (negligence), Count V (negligent infliction of emotional distress), Count VI (gross negligence), and Count VII (violation of Boston Police Department policy).[7]  The City is immune from any negligence claim under the "statutory public duty" rule codified in Sections 10(h) and 10(j) of the MTCA.

### 1.    The City Is Immune From Liability Pursuant To Section 10(h).

Section 10(h) of the MTCA immunizes the City from "any claim based upon the failure to establish a police department or a particular police protection service, or if police protection is provided, for failure to provide adequate police protection, <u>prevent the commission of crimes, investigate, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain suspects,</u> or enforce any law, but not including claims based upon the negligent operation of

---

[7]    Count VII of Plaintiff's Second Amended Complaint is a "Violation of Boston Police Department Policy" claim.  As there is no cause of action for violating a Boston Police Department policy, the City treats this claim as one for negligence.  <u>See</u> <u>Clough v. New England Tel. & Tel. Co.</u>, 342 Mass. 31, 37 (1961) (noting that an employee's violation of his employer's rules amounts to evidence of negligence).

motor vehicles, negligent protection, supervision or care of persons in custody, or as otherwise provided in clause (1) of subparagraph (j)."[8] G. L. c. 258, § 10(h) (emphasis added).

Both the Supreme Judicial Court and the Appeals Court have held that a municipality is immune under Section 10(h) where the police were negligent in failing to prevent harm caused by a third person's criminal acts. See Carleton, 418 Mass. at 629 ("clause (h) seeks to immunize a municipality when the criminal acts of a third person are a cause of plaintiff's harm, and the police were negligent in not preventing that criminal conduct"); Ford v. Town of Grafton, 44 Mass. App. Ct. 715, 724 (1998)("While the town's negligence reasonably could be inferred from the evidence…[and] while the town might have prevented [plaintiff's] injuries, its failure to do so is excluded from liability under the statute.").

In Ford, plaintiff Catherine Ford had a restraining order against her husband, James Davidson, and repeatedly informed the Grafton Police Department that Davidson was threatening her and violating the restraining order. 44 Mass. App. Ct. at 716-717. Among other shortcomings, the Grafton police failed to arrest Davidson for violating the restraining order, logged but never followed up on repeated complaints from Ford that Davidson had threatened to kill her, told Ford that "nothing could be done about the situation" after Davidson's psychiatrist warned that Davidson was threatening to kill her, and simply "logged" Ford's call informing them that Davidson had bought a gun. Id. at 718-719. Overall, the Grafton police took no action on Ford's complaints for over a year and a half. Id. Eventually, Davidson shot Ford, rendering Ford a quadriplegic, before fatally shooting himself. Id. at 720. Ford sued Grafton alleging negligence, among other things. With respect to Ford's negligence claim, the Appeals Court

---

[8] Plaintiff does not allege that this case involves the negligent operation of a motor vehicle or the negligent protection, supervision or care of a person in custody, so these exceptions to Section 10(h) immunity will not be discussed. To the extent Plaintiff may attempt to argue that Section 10(j)(1) saves her negligence claim, the reasons why it does not are explained below.

5

determined that Grafton, although arguably negligent, was immune under Section 10(h) for failing to protect Ford. Id. at 721-22. Importantly, the Appeals Court rejected Ford's argument that a police officer can be held liable for failing to arrest someone in accordance with G. L. c. 209A. Id.

In Carleton, Lynne Marie Carleton and Arthur T. Kelly were killed when a speeding motor vehicle operated by Garret Nagle, a drunk driver, failed to negotiate a curve on Route 30 and struck the vehicle in which the decedents were traveling. 418 Mass. at 624. The plaintiff alleged that a Framingham police officer was negligent because 1) he failed to conduct a threshold investigation of Nagle when he observed him earlier at Dunkin' Donuts; 2) he failed to place Nagle in protective custody; and 3) he parked his cruiser across the street and watched Nagle drive away from Dunkin' Donuts. Id. The Supreme Judicial Court concluded that because all of these theories of liability depended on the alleged failure of the police to prevent Nagle's criminal conduct, the town was entitled to immunity under Section 10(h).

Here, Plaintiff's allegations are analogous to those in Ford and Carleton because they hinge on the officers' purported failure to prevent Tremblay's criminal conduct. Plaintiff alleges that Officers Boyle and Hubbard were negligent because they failed to arrest Tremblay for violating the restraining order McMahon had against him. Even assuming this conduct was negligent, the City is nonetheless immune from liability under Section 10(h) pursuant to the Appeals Court's holding in Ford and the Supreme Judicial Court's holding in Carleton. The Appeals Court noted that "while the town might have prevented Ford's injuries, its failure to do so is excluded from liability under the statute." Ford, 44 Mass. App. Ct. at 724. The same is true here. Though the City may have prevented McMahon's death by arresting Tremblay on

November 16, 2014, its failure to do so does not expose the City to liability.[9] The fact that Officers Boyle and Hubbard were required by statute or Boston Police policy to arrest any person whom they had probable cause to believe was in violation of a restraining order does not change the immunity analysis. This argument was considered and rejected by the Appeals Court in Ford: "We agree that G. L. c. 209A mandates police officers to act in accordance with the statute. However, we find no language in the statute that holds officers liable for failing to do so." 44 Mass. App. Ct. at 726. Just as in Ford and Carleton, then, the City is immune from liability for its alleged failure to arrest Tremblay.[10]

### 2.    The City Is Immune From Liability Pursuant to Section 10(j).

Section 10(j) immunizes the City from:

> [A]ny claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

The Supreme Judicial Court has interpreted the legislative history of Section 10(j) and found that the purpose of that section is to "provide some substantial measure of immunity from tort liability to government employers." Brum v. Dartmouth, 428 Mass. 684, 695 (1999). It is now well-settled that the principle purpose of Section 10(j) is to preclude a public employer's

---

[9]    To date, Tremblay has not been convicted of McMahon's murder.

[10]   G. L. c. 258, § 10(j)(1), the exception to Section 10(h) immunity, is not applicable here. The exception provides that if a public employer makes explicit and specific assurances of safety and assistance to someone, and injury resulted in part from reliance on those assurances, the public employer can be held liable. Here, Plaintiff submits, in conclusory fashion, that "City of Boston employees provided Ms. McMahon with specific assurances of safety and Ms. McMahon was killed as a result of those assurances." Compl. ¶ 46. Plaintiff does not identify what these "specific assurances" were, who said them, or when they were made. As such, this type of allegation amounts to nothing more than "a formulaic recitation of the elements of a cause of action" and need not be credited. Twombly, 550 U.S. at 555. Moreover, a restraining order, in and of itself, is not a specific assurance of safety from a police officer. See Ariel v. Kingston, 69 Mass. App. Ct. 290, 293 (2007) (noting that the phrase "explicit and specific assurances of safety" for purposes of § 10(j)(1) requires a spoken or written assurance, not one implied from the conduct of the parties or the situation).

liability for their failures to prevent or diminish harm.  Id. at 696; Serrell v. Franklin County, 47 Mass. 400, 403 (1999).  Massachusetts courts have routinely barred claims against municipalities under Section 10(j) where public employees have failed to protect individuals from harm by outside sources.  See e.g. Jacome v. Commonwealth, 56 Mass. App. Ct. 486 (2002) (Section 10(j) barred claim based upon negligent failure of lifeguards to prevent drowning); Bonnie W. v. Commonwealth, 419 Mass. 122, 125 (1994) (Section 10(j) barred claim based upon the negligent failure of a probation officer to supervise parolee who sexually assaulted plaintiff); Pallazola v. Foxborough, 418 Mass. 639 (1994) (Section 10(j) barred personal injury claim based upon police department's failure to provide adequate police presence on a public road after a football game); Correia v. Town of Westport, 2017 WL 3940931, Civil Action No. 1:16-cv-12408-ADB, at *8 (D. Mass. Sep. 7, 2017) (Section 10(j) barred claim based upon police officer's failure to implement certain policy).

In its discussion of Section 10(j), the Court in Brum v. Town of Dartmouth held that for the "originally caused" exception to apply to Section 10(j), a plaintiff would have to show that the public employer acted affirmatively, and not just that it failed to act.  428 Mass. at 709.  The plaintiff in Brum argued that Section 10(j) immunity was not available to the defendants because the condition which resulted in her son's death was a lack of security on the school premises "originally caused" by defendants' failure to adopt security policies as they were required to do by law.  Id. at 691.  The Court rejected that argument, which would essentially open up "originally caused" conditions to include "conditions that are, in effect, failures to prevent harm," Id. at 696; and concluded that Section 10(j) did, in fact, shield the municipal defendants from liability.  The Court went on to note that an adoption of plaintiff's argument "would undermine [the] principal purpose [of Section 10(j)]".  Brum, 428 Mass. at 696.  Further, the

Court cautioned against allowing "neglect of duty" to satisfy the "original cause" exception because "the exception would swallow the rule." Id. at 692-93.

Here, Officers Boyle and Hubbard at most neglected their duty to arrest Tremblay because they neglected to confirm the existence of McMahon's restraining order against him. But this neglect cannot be the "original cause" of McMahon's injury, particularly where the immediate cause of McMahon's injury was a violent criminal act more than a day later by a third party. These alleged failures to act are the equivalent of claims for "neglect of duty" and as such are barred by Section 10(j).[11]

> **3. Characterizing The Officers' Conduct As "Gross" Negligence, As Opposed To Ordinary Negligence, Does Not Change The Immunity Analysis.**

In Count VI of her Second Amended Complaint, Plaintiff characterizes the officers' conduct as "grossly" negligent, presumably in an effort to avoid the ramifications of Sections 10(h) and 10(j). But this does nothing to save Plaintiff's claim because the Supreme Judicial Court has interpreted G. L. c. 258, § 2 to also preclude liability for gross negligence. See McNamara v. Honeyman, (1989) (holding that a "public employee is immune from a claim arising out of gross negligence because such a claim qualifies as a 'negligent or wrongful act or omission' under § 2) (emphasis added).

---

[11]  To the extent Count XI of Plaintiff's Second Amended Complaint can be construed as a negligence claim under a theory that the City failed to train or supervise its officers, the City would likewise be immune from liability under Section 10(j). Claims based on a failure to train or supervise are premised on a municipality's failure to act, rather than its affirmative conduct, and therefore are barred. See Willhauck v. Town of Mansfield, 164 F. Supp. 2d 127, 139 (D. Mass. 2001), citing Armstrong v. Lamy, 938 F. Supp. 1018, 1045-46 (D. Mass. 1996) (barring claims against municipality under Section 10(j) for its failure to train, supervise, or control its employees).

**C. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS BECAUSE THE CITY CANNOT BE LIABLE FOR INTENTIONAL TORTS.**

G. L. c. 258, § 10(c) states explicitly that a municipality is immune from liability for "any claim arising out of an intentional tort…including intentional mental distress." Accordingly, Plaintiff's intentional infliction of emotional distress claim (Count IV) against the City fails as a matter of law and must be dismissed.

**D. PLAINTIFF'S SECTION 1983 FAILURE TO TRAIN/SUPERVISE CLAIM FAILS BECAUSE PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS.**

Construed liberally, Counts XI, XII and XIII of Plaintiff's Second Amended Complaint attempt to allege a Monell claim against the City.[12] In Monell, the Supreme Court held that when the execution of a government's policy or custom inflicts a constitutional injury the government as an entity may be responsible under Section 1983. See Monell v. New York City Dep't of Social Services, 436 U.S. 658, 694 (1978). In support of her Monell claim, Plaintiff submits that "[t]he Boston Police officers involved in this case indicated in their internal affairs interviews that they did not have training or knowledge of the City of Boston's police department rules and regulations with respect to the handling of domestic violence cases." (Compl. ¶ 85). In an attempt to bolster her argument, Plaintiff also alleges, in conclusory fashion, that the City "had patterns of similar violations" and a "pattern of a lack of training[,]" Compl. ¶¶ 44-45, but offers no factual support for these assertions. The actual facts alleged in Plaintiff's Second Amended Complaint, which have not changed at all from her Amended Complaint, are not enough to support a Monell claim under either a failure to train or supervise theory.

---

[12] Claims VIII and IX also require Plaintiff to satisfy the Monell pleading requirements and fail for the same reason.

1.      **Failure To Train**

"The liability criteria for 'failure to train' claims are exceptionally stringent." Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998). A failure to train claim is actionable only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact and where the identified deficiency in a city's training program [is] closely related to the ultimate injury." Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005) (internal quotations omitted). Deliberate indifference generally requires that a plaintiff demonstrate "at least a pattern of similar violations" arising from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violation." Id. "[T]he fact that the training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." Young, 404 F.3d at 2. Here, Plaintiff does not allege that the City did not have training on what officers should do in domestic violence cases. To the contrary, Plaintiff states that the "Boston Police Department Rules and Procedures instruct officers that they must arrest any person that the officer observes, or has probable cause to believe, has committed a violation of a court order." (Compl. ¶ 26). Plaintiff states that the two officers involved here were, apparently, unaware of this rule. But Plaintiff has not identified any other officers who were unaware of this rule or were otherwise insufficiently trained on how to handle domestic violence cases, nor has Plaintiff pointed to a pattern of similar violations by other officers.[13] Instead, Plaintiff summarily concludes that the City failed to train its officers, while pointing only to this

---

[13]      Plaintiff states, in conclusory fashion, that the City "had a patterns [sic] of similar violations of restraining order" and that the City "had a pattern of a lack of training of Boston Police officers in the areas of restraining orders, arresting sex offender [sic] and creating a system that prevents laziness and/or incompetence from patrol officers to result in the death of citizens." Compl. ¶¶ 44-45. But Plaintiff does not identify any of these other alleged incidents or when they took place. As such, these types of allegations amount to nothing more than "a formulaic recitation of the elements of a cause of action" and need not be credited. Twombly, 550 U.S. at 555.

lone instance in which the officers were allegedly not familiar with the rule. This is not enough to support a Monell claim against the City under a failure to train theory.

### 2. Failure To Supervise

In similar conclusory fashion, Plaintiff states that "[l]iability is imposed when the municipality fails to…supervise its employees[,]" but offers no factual allegations in support her claim. It is well-established that those types of "allegations" are nothing more than a rote recitation of the basic elements of a municipal liability claim that, without any specificity or factual support, are insufficient to plead a claim for municipal liability under Section 1983. See Twombly, 550 U.S. at 555. Because Plaintiff has failed to allege sufficient facts in support of her Monell claim against the City, Counts XI, XII, and XIII of Plaintiff's Second Amended Complaint must be dismissed.[14]

### E. PLAINTIFF'S § 1983 DUE PROCESS CLAIMS FAIL BECAUSE THE CONSTITUTIONAL RIGHT TO DUE PROCESS HAS NOT BEEN IMPLICATED.

Plaintiff's § 1983 due process claims (Counts VIII, IX, XII, and XIII) fail because she has not alleged a constitutional violation.

### 1. Plaintiff's Procedural Due Process Claim Fails Because There Is No Property Interest In Police Enforcement Of A Restraining Order.

To the extent Plaintiff's Fourteenth Amendment claim is grounded in procedural due process, it fails because the Supreme Court does not recognize a property interest in police enforcement of a restraining order. See Castle Rock v. Gonzales, 545 U.S. 748 (2005). In Castle Rock, the plaintiff, Jessica Gonzales, alleged that the town of Castle Rock violated her procedural due process rights when its police officers, acting pursuant to official policy or custom, failed to respond properly to her repeated reports that her estranged husband was

---

[14] Counts XIII and IX fail for the same reason.

violating the terms of a restraining order when he abducted their three children. 545 U.S. at 751. Gonzales' husband ultimately murdered the three children before opening fire at a police station less than twelve hours later. Id. at 754. According to the Supreme Court, these allegations, while tragic, did not amount to a procedural due process violation because Gonzales did not have a property interest in police enforcement of the restraining order against her husband. Id. at 768. The Supreme Court added that this would be true regardless of whether underlying state law mandated the arrest of anyone found to be in violation of a restraining order. Id. at 766.[15] Under the holding in Castle Rock, the decedent did not have a property interest in the police enforcement of her restraining order against Tremblay. As a result, any procedural due process claim fails as a matter of law.

    **2.    Plaintiff's Substantive Due Process Claim Fails Because Negligent Conduct Does Not "Shock The Conscience" And The City Did Not Have An Obligation To Provide The Decedent With Minimum Levels Of Safety And Security.**

Plaintiff appears to advance two theories of liability under the substantive due process clause of the Fourteenth Amendment: 1) that the officers' failure to arrest Tremblay or otherwise check to see if McMahon had a restraining order against him was "conscience-shocking"; and 2) that the Federal Constitution imposes a duty on police officers to provide domestic violence victims with minimum level of safety and security.

    **a.    The Officers' "Negligent" Conduct Was Not "Conscience-Shocking"**

Turning to Plaintiff's first theory of substantive due process liability, to preserve the distinction between state tort law and constitutional due process violations, a substantive due

---

[15] The Supreme Court added that though the Fourteenth Amendment "did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented," the states were free to provide victims with personally enforceable remedies under state law. Massachusetts has legislated to immunize the City for this conduct pursuant to G. L. c. 258, §§ 10(h) and 10(j).

process claim demands conscience-shocking conduct. "The substantive due process guarantee does not . . . serve as a means of constitutionalizing tort law so as to 'impos[e] liability whenever someone cloaked with state authority causes harm.'" Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998)).  Instead, "[s]ubstantive due process is a constitutional cause of action that leaves the door 'slightly ajar for federal relief in truly horrendous situations.'" Clark v. Boscher, 514 F.3d 107, 112-12 (1st Cir. 2008) (quoting Néstor Colón-Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)).

When considering alleged substantive due process violations, the Supreme Court has stated that "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 848 n.8. Importantly, "negligently inflicted harm is 'categorically beneath the threshold' of a constitutional violation." Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 53 (1st. Cir. 2006) (quoting Lewis, 523 U.S. at 849). Conversely, conduct most likely to be conscience-shocking is conduct that is "intended to injure in some way unjustifiable by any government interest." Lewis, 523 U.S. at 849. Put another way, "[o]utside of a few narrow categories . . . this means conduct that is truly outrageous, uncivilized, and intolerable." Hasenfus v. LaJeunesse, 175 F.3d 68, 73 (1st. Cir. 1999). Overall, conscience-shocking conduct exhibits "an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." González-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010) (internal alterations and quotation marks omitted).

Here, there are no allegations of conscience-shocking behavior by any city employee. Primarily, there are no allegations that any employee intended to harm the decedent. See Lewis, 523 U.S. at 849 (conduct "intended to injure in some way unjustifiable by any government interest" is most likely to be conscience-shocking). Rather, Plaintiff's Second Amended Complaint describes the officers' conduct as negligent or grossly negligent or summarily labels the officers' conduct as "egregious" and "outrageous." (Compl. ¶¶ 53, 68, 75). None of these categories implicate intentional conduct. As discussed above, negligent conduct is "categorically beneath the threshold of a constitutional violation," Ramos-Piñero, 453 F.3d 48 at 53, and summarily labeling conduct as "egregious" and "outrageous" does not make it so. Under the facts alleged here, Plaintiff's substantive due process claim is not viable under the theory that the officers' conduct "shocked the conscience."

        b.    **The City Did Not Have An Obligation To Provide McMahon With Minimum Levels Of Safety And Security.**

Turning next, then, to Plaintiff's second theory of substantive due process liability, the City did not have an obligation to provide McMahon with minimum levels of safety and security simply by virtue of the fact that she was an alleged domestic violence victim. The Supreme Court has held that the only time the Constitution imposes upon the government a duty to assume responsibility for a person's safety and well-being is when the "State takes a person into its custody and holds him there *against his will*[.]" Id. at 200. To that end, the Supreme Court has recognized the possibility of a substantive due process violation in the context of the government's failure to provide adequate medical care to incarcerated prisoners and involuntarily committed mental patients. See Robinson v. California, 370 U.S. 660 (1962); Youngsberg v. Romeo, 457 U.S. 307, 314-325 (1982). Significantly, "[i]n the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on

15

his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." DeShaney, 489 U.S. at 200.  Because McMahon was not in custody, the officers did not have any constitutional obligation to provide her with minimum levels of safety and security.  As a result, Plaintiff's substantive due process claim fails as a matter of law.

### 3. Plaintiff Has Not Sufficiently Alleged A "State-Created" Danger Claim.

In addition to claiming that the City directly violated McMahon's substantive due process rights, the Second Amended Complaint also references a substantive due process theory known as a "state-created danger" claim.  The state-created danger theory is an implied exception to the general rule that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989).  The First Circuit has not been hospitable to the so-called state-created danger theory.  Indeed, "[w]hile [the First C]ircuit has discussed the possible existence of the state-created danger theory, [it] ha[s] never found it applicable to any specific set of facts."  Irish v. Maine, 849 F.3d 521, 526 (1st Cir. 2017).  Assuming this theory is cognizable at all in the First Circuit, the Complaint does not plausibly allege such a claim.

To allege a state-created danger claim, a plaintiff must allege, at a minimum, that "the government affirmatively acts to increase the threat to an individual of third-party private harm or prevents that individual from receiving assistance."  Morgan v. Town of Lexington, 823 F.3d 737, 743 (1st Cir. 2016) (quoting Coyne v. Cronin, 386 F.3d 280, 287 (1st Cir. 2004)); see Lockhart-Bembery v. Sauro, 498 F.3d 69, 77 (1st Cir. 2007) (state-created danger claim "might exist when a 'government employee, in the rare and exceptional case, affirmatively acts to

16

increase the threat of harm to the claimant or affirmatively prevents the individual from receiving assistance'") (quoting Frances-Colon v. Ramirez, 107 F.3d 62, 64 (1st Cir. 1997)); Hasenfus v. LaJeunesse, 175 F.3d 68, 73 (1st Cir. 1999) (state-created danger theory "may be implicated where 'a state official acts so as to create or even markedly increase a risk' to an individual").

In addition to these elements, a plaintiff must also allege that government conduct shocked the conscience. See Lockhart-Bembery, 498 F.3d at 77. "The burden to show state action that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even resulting from bad faith to something more egregious and more extreme." Melendez-Garcia v. Sanchez, 629 F.3d 25, 37 (1st Cir. 2010) (quotation marks omitted). Finally, because Counts VIII, IX, XI, XII, and XIII are asserted against the City, Plaintiff must plausibly allege the elements of municipal liability under Monell. See Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005) (assuming that complaint alleges a violation of a constitutional right, "there is a second inquiry as to whether the allegations meet the separate set of requirements as to particular categories of defendants to establish a claim within 42 U.S.C. § 1983").

Here, Plaintiff's state-created danger claim fails for a number of reasons. First, Plaintiff has not alleged that the City undertook any affirmative act that would give rise to a state-created danger claim by creating or increasing the risk to the decedent. Instead, Plaintiff cites only to purported failures of the officers to do certain things, like arrest Tremblay or check for the existence of a restraining order. Compl. ¶ 98. As noted by this Court in its Order dismissing Plaintiff's Amended Complaint, these allegations are not enough to support a state-created danger claim. Compare Irish v. Maine, 849 F.3d 521, 525-26 (1st Cir. 2017) (declining to dismiss a substantive due process claim based on the state-created danger theory where police

affirmatively increased risk of harm by enraging the abuser by telling him about victim's allegations without protecting her despite her specific request not to tell him) and Okin v. Vill. of Cornwall-on-Hudson Police Dept., 577 F.3d 415, 429 (2d Cir. 2009) (declining to dismiss state-created danger claim where police officers affirmatively engaged in a that-a-boy attitude with the abuser).

Second, even assuming that Plaintiff had sufficiently alleged that the City acted affirmatively to create or increase McMahon's risk of private harm, Plaintiff must still plausibly allege that the City's actions were conscience-shocking and that the City itself caused the injury through its policy, practice, or custom in accordance with Monell. See Rivera, 402 F.3d at 33 (review of complaint first requires whether the facts alleged state a claim for violation of constitutional rights and, second, "whether the allegations meet the separate set of requirements as to particular categories of defendants to establish a claim within 42 U.S.C. § 1983"). As explained above, the City's actions did not shock the conscience because the City had policies in place requiring police officers to arrest people who are found to be in violation of a restraining order. Absent conscience-shocking conduct, Plaintiff has not alleged a substantive due process violation and Counts XIII, IX, XI, XII and XIII ought to be dismissed on this basis alone.[16] Nor has Plaintiff alleged a constitutional violation by the City itself. Indeed, putting aside the number of conclusory allegations in Plaintiff's Second Amended Complaint, Plaintiff has not alleged sufficient factual matter that the affirmative acts of the City increased the risk of harm to the plaintiff from private violence. See Monell, 436 U.S. at 694; see also Section IV(D) above. Accordingly, any due process claim premised upon a state-crated danger theory must be dismissed.

---

[16] No municipal liability attaches absent an underlying constitutional violation. See Rivera, 402 F.3d 38-39 (citing City of Canton v. Harris, 489 U.S. 378, 391 (1989)).

### F.      PLAINTIFF'S § 1983 EQUAL PROTECTION CLAIM FAILS BECAUSE SHE HAS NOT ALLEGED THAT SHE WAS TREATED DIFFERENTLY THAN SIMILARLY SITUATED INDIVIDUALS.

Just as with her due process claims, Plaintiff's equal protection claim fails because Plaintiff has not sufficiently alleged that a municipal custom or policy was responsible for her injuries. However, even if Plaintiff had sufficiently alleged such an injury-causing policy or custom, her equal protection claim still fails because she has not alleged that the decedent was "intentionally treated differently than others similarly situated and that there [was] no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Plaintiff has not identified any "similarly situated" people who received different treatment than the decedent. In the absence of these allegations, Plaintiff's equal protection claim must be dismissed. See Freeman v. Town of Hudson, 714 F.3d 29, 39 (1st Cir. 2009) (affirming dismissal of equal protection claim where plaintiff failed to allege people who were "similarly situated").

### V.    CONCLUSION

WHEREFORE, for the reasons set forth above, the City respectfully requests that Plaintiff's Second Amended Complaint be dismissed in its entirety with prejudice.

    Respectfully submitted:

    DEFENDANT, CITY OF BOSTON

    By its attorneys:

    Eugene L. O'Flaherty
    Corporation Counsel

    /s/ Nicole M. O'Connor
    Nicole M. O'Connor (BBO#675535)

Senior Assistant Corporation Counsel
Erika P. Reis (BBO#669930)
Senior Assistant Corporation Counsel
City of Boston Law Department
Boston, MA 02201
(617) 635-4039 (O'Connor)
(617) 635-4031 (Reis)
Nicole.OConnor@boston.gov
Erika.Reis@boston.gov

## **CERTIFICATE OF SERVICE**

I, Nicole M. O'Connor, hereby certify that a true copy of the above document has been served upon all registered parties via this court's electronic filing system and upon all non-registered parties via first class mail.

Date:        December 5, 2018                    /s/ Nicole M. O'Connor

## **CERTIFICATE OF COMPLIANCE WITH RULE 7.1**

I, Nicole M. O'Connor, hereby certify that I conferred with counsel for Plaintiff, Danilo Avalon, via phone conference on December 4, 2018 regarding the issues raised in this motion. We were unable to narrow the issues raised in this motion.

Date:        December 5, 2018                    /s/ Nicole M. O'Connor